# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0033, <u>State of New Hampshire v. Jose Polanco Diaz</u>, the court on April 11, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(2). Following a jury trial, the defendant, Jose Polanco Diaz, was convicted of aggravated felonious sexual assault, RSA 632-A:2, I(a) (2016), burglary, RSA 635:1, I (2016), three counts of criminal threatening, RSA 631:4, I(a) (2016), falsifying physical evidence, RSA 641:6 (2016), theft, RSA 637:3 (2016), and indecent exposure, RSA 645:1 (2016) (amended 2022). On appeal, he argues that the Trial Court (<u>Anderson</u>, J.) erred by denying his motion to dismiss in which he argued, <u>inter alia</u>, that the State failed to prove his identity as the perpetrator of the charged offenses. We affirm.

The record before us includes the following evidence. In September 2020, the victim was living with her fiancé in a basement apartment in Manchester. After spending a sleepless night with a migraine headache, she went to sleep at 8 a.m. Her fiancé left to have coffee with his friend, who lived "maybe six houses" away. He did not lock the apartment door because the couple had only one set of keys. The victim was awakened by someone touching her back and rubbing her buttocks and who then ripped her pants. She saw a male masturbating while holding a machete. He then digitally penetrated her. She screamed and, unable to find her phone or purse, ran from the apartment. As she left she noticed her backpack outside on a bench; some of its contents were strewn on the ground and on the bench. When she reached the apartment of her fiancé's friend, she reported that she had been sexually assaulted. Her fiancé ran back to the apartment where he found a man standing in the bathroom "with a machete up over his head." At trial, he described the man as "black" with "afro hair" and "a big beard." He also watched surveillance video of himself entering and leaving his apartment and being followed by a man. As he waited for the police to arrive, he drove around the block with his friend looking for the man that he had found in his apartment. At one point, they saw him in the alley near the apartment.

Responding officers spoke with the victim and her fiancé, searched the apartment, and set up a perimeter position. Officer Pittman stopped the defendant while conducting the perimeter search but, after observing his calm demeanor and observing that he did not fully match the description of the assailant, the officer released him after identifying him. This interaction was recorded on the officer's body camera. After the officer subsequently saw a

photograph of the suspect in surveillance video collected as part of the investigation, he recognized him as the man that he had earlier stopped.

Additional surveillance videos were collected that showed the defendant: (1) walking toward the victim's apartment and coming out of that area approximately four minutes later carrying a black bag; (2) walking back toward the entrance to the apartment carrying black and white shoes and a long, hard object; and (3) shortly thereafter, wearing the black and white shoes and carrying his sneakers and the long, hard object. Two minutes after a patrol officer arrived at the victim's apartment, the defendant was seen running away from the apartment. He ran into a yard where he put something behind a shed.

At the close of the State's case, the defendant moved to dismiss the charges, on several grounds, including that the State had failed to establish the identity of the defendant as the perpetrator of the charged offenses. The trial court denied the motion and the defendant was subsequently convicted on eight of the charged offenses. This appeal followed.

On appeal, the defendant argues that the State presented only circumstantial evidence that he was the perpetrator of the charged offenses and that the evidence was insufficient to meet its burden. See State v. Ploof, 165 N.H. 113, 116 (2013) (State bears burden of proving beyond reasonable doubt that person charged with offense is perpetrator of the offense). We disagree.

The victim identified the defendant as her assailant when presented with a photo array on the day of the assault. Before she saw the defendant's picture, she identified another person as her assailant but upon seeing the defendant's picture, she identified him as her assailant. That she stated that she was 85 per cent sure that the photo depicted her assailant went to the weight of the evidence, but did not alter the fact that it was some direct evidence of the perpetrator's identity. See, e.g., Williams v. State, 466 S.W.2d 313, 314 (Tex. Crim. App. 1971) (observing that fact that witness cannot be positive of his or her identification goes to the weight of the testimony, not to its admissibility; therefore, lack of a positive identification is a jury issue).

We next address the standard of review applicable to this case. A challenge to the sufficiency of the evidence presents a question of law; our standard of review is therefore de novo. State v. Seibel, 174 N.H. 440, 445 (2021). When considering such challenges in a case that includes both direct and circumstantial evidence, we objectively review the entire record to determine whether any rational trier of fact could have found guilt beyond a reasonable doubt, considering the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the State. Id. We examine each item of evidence in the context of the entire case, and not in isolation. Id. The trier of fact may draw reasonable inferences from facts proved as well as from

2

facts found as the result of other inferences, provided they can be reasonably drawn therefrom.  Id.  The defendant bears the burden of proving that the evidence was insufficient to prove guilt.  Id.

The evidence before the jury included: (1) surveillance video admitted as a full exhibit which depicted the defendant walking towards and subsequently away from the victim's apartment during the short period in which the assault took place; (2) still photographs produced from the surveillance video; (3) footage from the body camera worn by Officer Pittman during his stop of the defendant; (4) testimony by two investigating officers who identified the defendant as the male seen in still photographs taken from the surveillance video; and (5) the identification by another investigating officer of the defendant as the male that he had interviewed on the day of the assault.  Additional video evidence showed the defendant's actions following the assault of the victim which included him running from her apartment and hiding a machete when he saw the police.  When later interviewed, the defendant denied at first that he had been anywhere other than a nearby restaurant but, after additional questioning, he admitted that he had entered a nearby basement apartment during the morning of the assault.

Having reviewed the record before us, including the transferred exhibits, we conclude that a rational trier of fact, after considering the evidence presented, and all reasonable inferences drawn therefrom, in the light most favorable to the State could have found beyond a reasonable doubt that the defendant committed the offenses of which he was convicted.

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

3